IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RTW GOODS, LLC DBA BEARCREEK IMPORTS, LLC, | § § § § | |
| Plaintiff/Counter Defendant, | § | |
| v. | § § | CIVIL ACTION NO: 3:24-cv-03272-G |
| HARINDER SIDHOO AND RUBY SIDHOO., | § § § | |
| Defendants/Counter Plaintiffs | § § § | |
| v. | § § | |
| JOHN BLACKROCK AND JONATHAN ELDER | § § § | |
| Third Party Defendants. | § § | |

**PLAINTIFF'S ORIGINAL ANSWER TO COUNTERCLAIM**

**TO THE HONORABLE COURT:**

Plaintiff/Counter Defendant RTW Goods, LLC d/b/a Bearcreek Imports, LLC ("Bearcreek) files this Plaintiff's Original Answer to Counterclaim filed by Harinder Sidhoo ("Hirander") and Ruby Sidhoo ("Ruby") (Hirander and Ruby shall collectively be referred to as the "Sidhoos"), and respectfully shows as follows:

**I.**

**Nature of Counterclaim**

1. No response is required to the statements made in Paragraph 26 of the Counterclaim. To the extent a response is required, Bearcreek admits the counterclaim arises from the same transaction at the center of Bearcreek's First Amended Complaint – Bearcreek's

ANSWER TO COUNTERCLAIM, Page 1

1654297.1

sale of assts to Aarjay Products, LLC ("Aarjay") via an Asset Purchase Agreement (the "APA") and the Sidhoos are husband and wife members of Aarjay and that they personally guaranteed a portion of the purchase price.  All other allegations in paragraph 26 of the Counterclaim are denied.

## II.

## Jurisdiction and Venue

2. Bearcreek admits the allegations in Paragraph 27 of the Counterclaim.

3. Bearcreek admits the allegations in Paragraph 28 of the Counterclaim.

## III.

## Parties

4. Bearcreek admits the allegations in Paragraph 29 of the Counterclaim.

5. Bearcreek admits the allegations in Paragraph 30 of the Counterclaim.

6. Bearcreek admits the allegations in Paragraph 31 of the Counterclaim.

7. Bearcreek admits the allegations in Paragraph 32 of the Counterclaim.

## IV.

## Background Facts

8. Bearcreek lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 33 of the Counterclaim.  With the exception of the Sidhoos' reference to "glowing" which is too vague to either admit or deny all other allegations in paragraph 33 of the Counterclaim are admitted.

9. Bearcreek admits the allegations in Paragraph 34 of the Counterclaim.

10. Bearcreek lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 35 of the Counterclaim.

11. Bearcreek admits the allegations in Paragraph 36 of the Counterclaim with the exception that even though there should not have been "any of the outward operations of the business," which Bearcreek denies as the Sidhoos did change the "outward operations of the business."

12. Bearcreek denies the allegations in paragraph 37 of the Counterclaim. In fact, there are no such things as dummy SKUs. In businesses which maintain heavy inventory, SKUs are retained in the event even though a product is not selling well now it may sell well in the future as consumer tastes change. For example, one color might not sell very well. Further when selling through Amazon, if an SKU deleted then so is the Amazon customer reviews attached to said SKU. Therefore, it would never make sense to actually delete a SKU on Amazon. As for the financials, Bearcreeek retained an accounting firm to prepare its financials and as it turned out the Sidhoos retained and continue to use the same accounting firm.

13. Bearcreek denies the allegations in paragraph 38 of the Counterclaim. In fact, Bearcreek received earnout payments Q2, Q3 and Q4, 2020. Sales thereafter declined and contributed to several factors. First the Sidhoos decided to immediately stop marketing the same way as Bearcreek. The Sidhoos ceased or reduced paid advertising off of Amazon, and ceased or reduced creating promotional brand/product videos and photos each year. Instead, the Sidhoos continued to use the same videos and photos used by Bearcreek  The second reason was Covid. Amazon placed huge restrictions during 2020 on what products could be sold and shipped into their warehouses. Amazon wanted to increase warehouse space for Covid related products like disinfectants and masks. Third, when the assets were sold, Bearcreek had a virtual assistant who was instrumental in handling tedious type work such as researching Bearcreek's/Aarjay's biggest competitors and reporting its findings weekly. Bottom line, the Sidhoos did not think the strategies employed by Bearcreek were important and discontinued many of them.

14. Bearcreek denies the allegations contained in paragraph 39 of the Counterclaim. In fact, the Royal Oak single adjustable straps using the D-ring attachments were not selling as well and had negative reviews which though not true. As acknowledged by the Sidhoos, this was disclosed to the Sidhoos. This change had no material impact on the finances of Aarjay. As for Meraki World Merchants ("Meraki") allegedly violating a non-compete, Merkai was set up in August 2018 for the purpose of importing and selling freshwater trout from Columbia. Meraki then pivoted to selling men's leather shoes made in Columbia and then in 2022, after termination of the non-compete as to John Blackrock, Merkai started selling wallets. As for Luke Bartell, he was a member of Merkai prior to the closing of the sale of assets to Aarjay. Further, none of the items sold by Merkai were "Restricted Products" under the Non-Compete and Non-Solicitation Agreement. Finally, at no time did Merkai, John Blackrock and Jonathan Elder ("Elder and Blackrock") solicit Luke Bartell to leave Aarjay or his terminate his relationship with Aarjay.

15. Bearcreek denies the allegations contained in paragraph 40 of the Counterclaim. Bearcreek admits that Elder and Blackrock did continue to advise the Sidhoos on how to market the Aarjay products. In point of fact, Bearcreek never used "black hat tactics" and were known by other sellers for refusing to be use "black hat tactics." Further, Bearcreek was never suspended by Amazon or any other company for unethical activities. Further, "Rebate Key" is not considered a "Black Hat Tactic" and wasn't frowned upon by Amazon. In fact, "Rebate Key" was on Amazon's approved list of software providers when Elder and Blackrock recommended it to the Sidhoos. Amazon ultimately removed Rebate Key after the sale to the Sidhoos a few years because Amazon recognized how profitable it was and created their own "rebates."

16. Bearcreek denies the allegations contained in paragraph 41 of the Counterclaim.

17. In fact, the Royal Oak single adjustable straps using the D-ring attachments were not selling as well and had negative reviews which though not true. As acknowledged by the

Sidhoos, this was disclosed to the Sidhoos. This change had no material impact on the finances of Aarjay. As for Meraki World Merchants ("Meraki") allegedly violating a non-compete, Merkai was set up in August 2018 for the purpose of importing and selling freshwater trout from Columbia. Meraki then pivoted to selling men's leather shoes made in Columbia and then in 2022, after termination of the non-compete as to John Blackrock, Merkai started selling wallets. As for Luke Bartell, he was a member of Merkai prior to the closing of the sale of assets to Aarjay. Further, none of the items sold by Merkai were "Restricted Products" under the Non-Compete and Non-Solicitation Agreement. Finally, at no time did Merkai, Elder or Blackrock solicit Luke Bartell to leave Aarjay or his terminate his relationship with Aarjay. As for the Sidhoos' claim that Blackrock wrote an article, which was published in August 2024, well after the sale to the Sidhoos in August 2019, that RFID is not necessary, the fact is that in 2019, it was best practice to use RFID wallets but over the years, credit/debit card technology had improved and by 2023 RFID wallets were not necessarily considered necessary. Yet, as stated in Blackrock's article, RFID wallets were and are still considered best practice especially for security cards issued by hotels and employers wherein such cards are RFID capable. Further, at no time did Blackrock or Elder advise the Sidhoos "to no longer stock the double adjustable straps … because 'they don't' sell.' "

## IV.

## Fraud/Fraudulent Inducement

18.     Bearcreek denies the allegations in paragraph 42 of the Counterclaim.

## V.

## Affirmative Defenses

19.     Bearcreek pleads the following defenses, some of which may be affirmative defenses on which the Sidhoos will have the burden of proof and others of which relate to the

elements of the Sidhoos causes of action. By pleading these defenses, Bearcreek does not assume the burden of proof on any defense for which it would not otherwise have the burden of proof under Texas law. Subject to and without waiving anything in this pleading, Bearcreek raises the defenses below.

20.     Pleading further and in the alternative, the Sidhoos claims are barred, in whole or in part, because all conditions precedent have not been performed or have occurred as alleged by the Sidhoos.

21.     Pleading further and in the alternative, the Sidhoos' claims are barred, in whole or in part, by the doctrine of accord and satisfaction of the Sidhoos.

22.     Pleading further and in the alternative, the Sidhoos' claims are barred, in whole or in part, by the doctrine of unclean hands of the Sidhoos.

23.     Pleading further and in the alternative, the Sidhoos' claims are barred, in whole or in part, by virtue of the doctrine of estoppel, quasi-estoppel or other equitable doctrines.

24.     Pleading further and in the alternative, the Sidhoos' claims are barred, in whole or in part, due to the Sidhoos' prior material by failing to fully perform under the contract/guaranty the Sidhoos alleged recission.

25.     Pleading further and in the alternative, the Sidhoos' claims are barred in whole or in part due to the Sidhoos' failure to mitigate their damages.

26.     Pleading further and in the alternative, the Sidhoos' claims are barred in whole or in part due to the Sidhoos' fraud.

27.     Pleading further and in the alternative, the Sidhoos claims are barred, in whole or in part, by virtue of the doctrine of offset, set-off or recoupment.

28.     Pleading further and in the alternative, the Sidhoos claims are barred, in whole or in part, by virtue of waiver.

29. Pleading further and in the alternative, the Sidhoos claims are barred, in whole or in part, by virtue of laches.

30. Pleading further and in the alternative, the Sidhoos' claims are barred, in whole or in part, because Plaintiff breached its agreement with Defendant.

31. Pleading further and in the alternative, the Sidhoos' counterclaims are barred in whole or in part by reason of their failure to perform.

32. Bearcreek reserves the right to assert such other and/or affirmative defenses which cannot be anticipated at this time, but which may become apparent and applicable during the pendency of this lawsuit.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, RTW Goods, LLC d/b/a Bearcreek Imports, LLC prays that for the following:

(1) RTW Goods, LLC d/b/a Bearcreek Imports, LLC be awarded actual damages in excess of $443,214.02 against Defendants/Counter Plaintiffs/Third Party Plaintiffs Harinder Sidhoo and Ruby Sidhoo representing the economic damages suffered by RTW Goods, LLC d/b/a Bearcreek in connection with the Guaranty claims;

(2) RTW Goods, LLC d/b/a Bearcreek Imports, LLC be awarded pre-judgment in the amount of 18% per annum and post-judgment interest;

(4) RTW Goods, LLC d/b/a Bearcreek Imports, LLC be awarded reasonable and necessary attorneys' fees in the amount of $50,000.00 if tried to a verdict before this court, another $50,000.00 if appealed to the Fifth Circuit Texas Court of Appeals and another $50,000.00 if appealed to the United States Supreme Court;

(5) all relief requested by Defendants/Counter Plaintiffs/Third Party Plaintiffs Harinder Sidhoo and Ruby Sidhoo be denied and that they take nothing by their counterclaim against RTW Goods, LLC d/b/a Bearcreek Imports, LLC;

(6) costs of Court; and

(7) for such other and further relief to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**COWLES & THOMPSON, P.C.**

By: */s/William L. Siegel*
 **WILLIAM L. SIEGEL**
 Texas Bar No. 18342480

901 Main Street, Suite 4000
Dallas, TX 75202
(214) 672-2000
(214) 672-2020 (Fax)

ATTORNEYS FOR RTW GOODS, LLC D/B/A BEARCREEK IMPORTS, LLC

## CERTIFICATE OF SERVICE

This is to certify that on the 7th day of May, 2025, a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record via electronic mail as listed below:

Justin L. Jeter
Jeter Melder, LLP
1006 N. Bowen Road, Suite 126
Arlington Texas 76012

*/s/William L. Siegel*
**WILLIAM L. SIEGEL**