**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **RTW GOODS, LLC DBA BEARCREEK IMPORTS, LLC,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO: 3:24-cv-03272-G** |
| | § | |
| **HARINDER SIDHOO AND RUBY SIDHOO.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JOHN BLACKROCK AND JONATHAN ELDER** | § | |
| | § | |
| | § | |
| **Third Party Defendants** | § | |

---

**PLAINTIFF'S AND THIRD PARTY DEFENDANTS BRIEF IN SUPPORT OF**
**PLAINTIFF'S AND THIRD PARTY DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

---

**COWLES & THOMPSON, P.C.**

By: */s/William L. Siegel*
    **WILLIAM L. SIEGEL**
    Texas Bar No. 18342480

901 Main Street, Suite 4000
Dallas, TX 75202
(214) 672-2000
(214) 672-2020 (Fax)
Email: bsiegel@cowlesthompson.com

ATTORNEYS FOR RTW GOODS, LLC D/B/A
BEARCREEK IMPORTS, LLC AND
JOHN BLACKROCK AND JONATHAN ELDER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

I.    PRELIMINARY STATEMENT ............................................................... 1

II.   BACKGROUND ....................................................................................... 1

III.  ARGUMENT AND AUTHORITIES ....................................................... 3

   A.   Traditional Summary Judgment Standard. ........................................ 3

   B.   Undisputed Facts Establish That Plaintiff is Entitled to Summary Judgment on Its Guaranty Claim ......................................................................................................... 4

   C.   The Sidhoos Have Wholly Failed to make a showing sufficient to establish the existence of an element essential to their Claim for Fraud/Fraud in the Inducement ............................... 6

   D.   Addressing Defendants' Specific Allegation. .................................. 10

   E.   Defendants Profited Greatly Aarjay .................................................. 13

   F.   Defendants' Damages Are Circumstantial and Too Speculative ...................................... 15

CONCLUSION ................................................................................................... 16

CERTIFICATE OF SERVICE .......................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                       **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................3, 4

*Aquaplex, Inc. v. Rancho la Valencia, Inc.*,
    297 S.W.3d 768 (Tex. 2009) (per curiam).................................................................6

*Bazan ex rel. Bazan v. Hidalgo County*,
    246 F.3d 481 (5th Cir. 2001) .....................................................................................4

*BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*,
    2024 U.S. Dist. LEXIS 155364 ................................................................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).....................................................................................................3

*Cora Pub, Inc. v. Cont'l Cas. Co.*,
    619 F.2d 482 (5th Cir. 1980) ...................................................................................15

*De Santis v. Wackenhut Corp.*,
    793 S.W.2d 670 (Tex. 1990).....................................................................................6, 7

*Dowling v. NADW Marketing, Inc.*,
    631 S.W.2d 726 (Tex. 1982).......................................................................................7

*Haralson v. Rumsfeld*,
    391 F.Supp.2d 442 (N.D. Tex. 2005) .........................................................................3

*In re Int'l Profit Assocs.*,
    274 S.W.3d 672 (Tex. 2009).......................................................................................7

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
    341 S.W.3d 323 (Tex. 2011).......................................................................................6

*Malacara v. Garber*,
    353 F.3d 393 (5th Cir. 2003) .....................................................................................4

*Matsushita Electric Industrial Company v. Zenith Radio Corporation*,
    475 U.S. 574 (1986).....................................................................................................4

*National Property Holdings, L.P. v. Westergren*,
    453 S.W.3d 419 (Tex. 2015).......................................................................................7

*Roehrs v. Conesys, Inc.*
    332 Fed. Appx. 184 (5th Cir. 2009).........................................................................15

*Stone v. Lawyers Title Ins. Corp.*,
    554 S.W.2d 183 (Tex. 1977)...............................................................6, 7

*Wright v. Sydow*,
    173 S.W.3d 534 (Tex. App.Houston [14th Dist.] 2004, pet. denied) .......................................7

**Statutes**

11 U.S.C §522(b)(4) ...............................................................14

Fed. R. Civ. P. 56(c) ...............................................................1, 3

Va Code Ann, §34-34 (B), B ...............................................................14

**TO THE HONORABLE COURT:**

Plaintiff RTW Goods, LLC d/b/a Bearcreek Imports, LLC ("Plaintiff") files this Brief in Support of Traditional Motion for Summary Judgment against Defendants Harinder Sidhoo ("Harinder") and Ruby Sidhoo ("Ruby") (Harinder and Ruby shall collectively be referred to as the "Sidhoos"), and Plaintiff and Third Party Defendants, John Blackrock and Jonathan Elder file this Brief in Support of their No Evidence Motion for Summary Judgement and respectfully shows as follows:

## I.  PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 56 Plaintiff seeks summary judgment on its Guaranty claim against the Sidhoos as there is no genuine dispute as to any material fact and thus Plaintiff is entitled to judgment as a matter of law as more fully set forth in Plaintiff's Brief in Support of Plaintiff's Traditional Motion for Summary Judgment.

Pursuant to Federal Rule of Civil Procedure 56 Plaintiff and Third Party Defendants seek a no evidence summary judgment on the Sidhoos claims based on "fraud/fraudulent inducement and violations of a non-compete as more fully set forth in Plaintiff's and Third Party Defendant's Brief in Support of Plaintiff's No Evidence Motion for Summary Judgment.

## II.  BACKGROUND

Plaintiff sold substantially all of its assets to Aarjay Products, LLC ("Aarjay") by virtue of an assignment by Harinder of his contractual rights in an Asset Purchase Agreement between Plaintiff and Harinder. The Sidhoos, as husband and wife, are the sole members of Aarjay.  As part of the sale transaction, Aarjay executed a Secured Promissory Note and Security Agreement ("Note") in the amount of $706,860.00 and the Sidhoos executed a Personal Guaranty ("Guaranty") guarantying full payment of the Note.  Aarjay is in default of its payment obligations under the Note and still owes the final balloon payment of $418,860.00 which was due and payable

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, Page 1**

on August 13, 2024.  Plaintiff seeks recovery against the Sidhoos based on the Personal Guaranty in the principal amount due and owing, $418,860.00 plus $20,906.32 consisting of the 5% charge referenced in the Note, plus post default interest of 18% per annum which as of December 12, 2024 is $25,087.59 for a total of $443,214.02 and which continues to accrue interest at the rate of 18% per annum (to be referred as the "Claim").

The Sidhoos filed a Counterclaim against Plaintiff and a Third Party Claim against the Third Party Defendants who are the owners of Plaintiff.  The Sidhoos assert claims of fraud and fraudulent inducement maintaining that Plaintiff and Third Party Defendants (a) employed dummy SKUs when in fact there is no such thing as dummy SKUsSee[1] and which Plaintiff and Third Party Defendants deny, there being no such evidence supporting a claim for fraud, (b) engaged in various schemes to boost sales prior to the sale of assets including manipulating Amazon's algorithm's which Plaintiff and Third Party Defendants deny, there being no such evidence supporting a claim for fraud including use of "RebateKey"[2], (c) engaged in "black hat tactics[3]" which Plaintiff and Third Party Defendants deny, there being no such evidence supporting a claim for fraud; and (d) Third Party Defendants violated a non-compete by selling wallets in competition with the business and alleging that Third Party Defendants advised Plaintiff's RFID wallets[4] were valuable and alleging that Third Party Defendant John Blackrock had written an article claiming otherwise, all of which Plaintiff and Third Party Defendants deny there being no such evidence supporting a claim for fraud or non-competition.

---

[1] An SKU, or Stock Keeping Unit, is a unique alphanumeric code that businesses use to identify and track their products internally. It's essentially a unique identifier for each product variation, like a specific size or color of a shirt, and helps with inventory management.

[2] RebateKey is a cashback website, similar to those old mail-in rebate forms, but faster and done online. It partners with Amazon and other online marketplaces to offer buyers rebates on purchases. Sellers use RebateKey to promote their products and reach a wider audience, while buyers can get deals, sometimes even free products, through rebates.

[3] Black hat tactics on Amazon refer to unethical or irregular practices that some sellers use to gain a fraudulent advantage on Amazon. These methods can include fake reviews, counterfeit claims, click fraud, and manipulating search rankings.

[4] RFID wallets are designed to protect your credit cards, debit cards, and other RFID-enabled cards from electronic theft.

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, Page 2**

## III. ARGUMENT AND AUTHORITIES

**A. <u>Traditional Summary Judgment Standard</u>.**

Per Federal Rule of Civil Procedure 56 "[a] party may move for summary judgment identifying each claim or defense  - or the part of each claim or defense – on which summary judgment is sought."  Summary Judgment is proper in any case where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial." *Haralson v. Rumsfeld*, 391 F.Supp.2d 442, 443 (N.D. Tex. 2005) (*citing Celotex Corp.*, 477 U.S. at 322 (1986)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986).

In *Celotex*, the Supreme court stated:

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view,  the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation,  there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[The] standard [for granting summary judgment] mirrors the standard  for a directed verdict.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).

A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue

as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.") To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### B. Undisputed Facts Establish That Plaintiff is Entitled to Summary Judgment on Its Guaranty Claim.

In Defendants' First Amended Answer and Affirmative Defenses and Original Counterclaim [Dkt 23], Defendants admit paragraphs 8 – 10 of Plaintiff's First Amended Complaint [Dkt 7] which state as follows:

> 8. On March 4, 2019, Harinder and Plaintiff entered into an Asset Purchase Agreement between Harinder and/or Assigns and Plaintiff dated March 4, 2019, as amended by that certain Amendment to Asset Purchase Agreement dated June 29, 2019 ("First Amendment") as further amended by that certain Second Amendment to Asset Purchase Agreement dated July 25, 2019 ("Second Amendment") as further amended by that certain Third Amendment to Asset Purchase Agreement dated August 13, 2019 ("Third Amendment") as further amended by that certain Fourth Amendment to Asset Purchase Agreement dated August 14, 2019 ("Fourth Amendment") (the Asset Purchase Agreement, First Amendment, Second Amendment, Third Amendment and Fourth Amendment shall collectively be referred to as the "Asset Purchase Agreement"). The Asset Purchase

Agreement was subsequently assigned by Harinder to Aarjay pursuant to that certain Assignment and Assumption Agreement dated August 13, 2019.

       9.      As part of the Asset Purchase Agreement, Aarjay executed a Secured Promissory Note and Security Agreement dated August 13, 2019, in the principal amount of $706,860.00 ("Note") and the Sidhoos executed a Personal Guaranty. A copy of the Note and Personal Guaranty which is attached to the Note as Exhibit "A" is attached hereto for all purposes as Exhibit "1." [5]

       10.    As part of the Asset Purchase Agreement, Plaintiff and Aarjay executed a Bill of Sale, an Inventory Consignment Agreement, a Non-Compete and Non-Solicitation Agreement by and between Plaintiff, John Blackrock, and Jonathan Elder, a Patent Assignment Agreement, and a Trademark Assignment Agreement, all of which are dated August 13, 2019 (such agreements collectively referred to as the "APA Agreements").

Defendants further admit that Plaintiff sent demand in connection with the Guaranty.

Though Defendants deny they are liable under the Guaranty, they admit they signed the Guaranty and presumably deny liability based on their alleged fraud claims.

Further, pursuant to the Affidavit of John Blackrock and Jonathan Elder attached to the Appendix as Exhibits 1 and 2 respectively, one of the principals of Plaintiff, Aarjay is in default of its obligations under the Note having failed to timely pay the balloon payment of $418,126.43 due and owing on August 13, 2024. As of December 12, 2024, in addition to the principal amount of $418,126.43 being due and payable, Aarjay owes an additional $20,906.32 consisting of the 5% charge referenced in the Note, plus post default interest of 18% per annum which as of December 12, 2024 is $25,087.59 for a total of $443,214.02 (sometimes to be referred as the "Claim"), with interest accruing at the per diem rate of $220.06. Though demand has been made on the Sidhoos to pay the Claim, the Sidhoos have wholly failed and refuse to pay the Claim. *See Affidavit of John Blackrock, Pages 2 and 3, Paragraph 7 and Affidavit of Jonathan Elder, Pages 2 and 3, Paragraph 7.*

---

[5] See Appendix Exhibit 1-G and 2-G the Note and Guaranty.

For these reasons, Plaintiff is entitled to judgment on its guaranty in the amount of $443,214.02 with interest accruing at the per diem rate of $220.06 plus attorneys' fees.

## C. The Sidhoos Have Wholly Failed to make a showing sufficient to establish the existence of an element essential to their Claim for Fraud/Fraud in the Inducement

The Sidhoos assert claims against Plaintiff and Third Party Defendants for fraud and fraudulent inducement maintaining that Plaintiff and Third Party Defendants employed dummy SKUs when in fact there is no such thing as dummy SKUs. Defendants further allege Plaintiff and Third Party Defendants engaged in various schemes to boost sales prior to the sale of assets including manipulating Amazon's algorithms through use of RebateKey. Defendants further allege Plaintiff and Third Party Defendants engaged in "black hat tactics". Defendants further allege that Third Party Defendants violated a non-compete by selling wallets in competition with the business of Aarjay, that Third Party Defendants advised them that the RFID wallets which Plaintiff had sold prior to the sale of business to Aarjay were valuable and that Third Party Defendant John Blackrock had written an article claiming otherwise.

As a general rule, the following elements must appear to constitute actionable fraud based on misrepresentation: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011); *Aquaplex, Inc. v. Rancho la Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam); *De Santis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977). Each of these elements must be established in order for there to be recovery; the absence of any

element is grounds for an instructed verdict D*e Santis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977).

Fraud in the inducement of a contract consists of a material representation of fact that was false, that was either known to be false when made or was recklessly asserted without knowledge of the truth, which was intended to be acted on, that was relied on, and that caused injury. *National Property Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 423 (Tex. 2015); *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 678 (Tex. 2009)]. Representations made recklessly with no knowledge of the truth and as positive assertions are fraudulent if the representations are made with the intention that the other party act on them. *See Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 727 (Tex. 1982)]. The elements of fraud implicitly require that the victim not know that the representations were false. *Wright v. Sydow*, 173 S.W.3d 534, 546 (Tex. App.Houston [14th Dist.] 2004, pet. denied).

So, in summary there are three allegations of fraud and fraud in the inducement, employing dummy SKUs, employing schemes to boost sales, using black hat tactics and issues pertaining to RFID wallets including non-competition violations.

Plaintiff and Third Party Defendants deny all such allegations and maintain that after adequate time for discovery Defendants are unable to establish the existence of an element essential to their allegations of fraud and fraud in the inducement for which they bear the burden of proof at trial. Bottom line, there can be "no genuine issue as to any material fact," regarding such allegations of fraud and fraud in the inducement.

Attached to Plaintiff's Appendix in Support of Plaintiff's Motion for Summary Judgment as Exhibit "3" is Defendants' First Amended Objections and Responses to Plaintiff's First Discovery Requests. Interrogatory No. 2 requested Defendants as follows:

**Interrogatory 2**: State in detail all facts supporting your denial in paragraph 11 of your Answer to paragraph 11 of the Complaint wherein Plaintiff alleges –

11. Aarjay is in default of its obligations under the Note having failed to timely pay the balloon payment of $418,126.43 due and owing on August 13, 2024. As of December 12, 2024, in addition to the principal amount of $418,126.43 being due and payable, Aarjay owes an additional $20,906.32 consisting of the 5% charge referenced in the Note, plus post default interest of 18% per annum which as of December 12, 2024 is $25,087.59 for a total of $443,214.02 (sometimes to be referred as the "Claim"), with interest accruing at the per diem rate of $220.06. Though demand has been made on the Sidhoos to pay the Claim, the Sidhoos have wholly failed and refuse to pay the Claim.

**Response:** The Sidhoos object to this interrogatory because it is a contention interrogatory that cannot be fully responded to until the close of discovery. Responding to detailed contention interrogatories at this early stage in litigation would require the Sidhoos to articulate theories of their case not yet fully developed and may inappropriately lock the Sidhoos into positions before they have discovered the relevant evidence to support this particular contention. Subject to this objection and specifically reserving the right to supplement this response, the Sidhoos contend that Aarjay—like the Sidhoos—was fraudulently induced into entering into the Asset Purchase Agreement and Note. The Sidhoos contend that Plaintiff's fraudulent inducement—and its ongoing breaches of non-competition provisions— should result in the rescission of the underlying agreements [sp], including the Personal Gaurantees. Among other things, the Sidhoos believe that Jon Elder and John Blackrock have participated in competing businesses in violation of the APA's non-compete language and their individual non-competes. Jon Elder operates a consulting business called "Black Label Advisor," where he claims to "[h]ave coached 500+ Amazon sellers and helped them hit their revenue goals." Mr. Elder, however, promised not to "manage, operate, consult with, render services for, or in any manner participate in" businesses selling any of the products being sold by Bearcreek at the time of the APA or that had been sold by Bearcreek since August 1, 2017. Based on information and belief, Mr. Elder has provided consulting services to businesses in violation of these obligations. Similarly, Mr. Blackrock violated the non-competition agreement by designing and selling leather wallets with a very similar design to those sold by Aarjay. While these wallets are non-RFID, Mr. Blackrock competes directly with Aarjay by claiming that wallets do not need RFID— despite selling RFID wallets to Aarjay. Mr. Blackrock is advertising that consumers do need the very wallets that Bearcreek offered to consumers as part of the business that Aarjay purchased. Additionally, Bearcreek manipulated the overall value of the business in the following ways: creating dummy SKU's that had no actual sales; directing Aarjay to discontinue selling "adjustable Single hanging straps" after the close of the APA, which amounted to thousands of dollars in lost sales; manipulating sales figures to show higher profits in 2018 than were actually achieved; using unauthorized and

unpermitted "black hat tactics" to boost Amazon rankings before the close of the APA; and, failing to transfer ownership of its patents for products to Aarjay. Unsurprisingly, Aarjay's business began collapsing almost immediately after the APA closed—despite running it in largely the same way as Bearcreek.

Similar responses were made to Interrogatory No. 7 regarding facts supporting Defendants' affirmative defenses of prior material breach, Interrogatory No. 8 regarding facts supporting Plaintiff's failure to perform conditions precedent, Interrogatory No.9, regarding failure of consideration, and Interrogatory No. 10, regarding facts supporting fraudulent inducement.

Further as for all the Interrogatories, including Interrogatory Nos. 2, 7, 8 and 9, Defendants took the position that they needed more time to articulate their theories.

Yet, per Defendants' response to Request for Admission No. 12 they admit never notifying Plaintiff of fraud and fraudulent inducement.

> **Request 12:** Admit that until the Proceeding was filed Defendants never notified Plaintiff that "Plaintiff fraudulently induced Defendants to enter into their agreement."
> **Response:** Admit

To be clear, the sale of assets occurred on August 13, 2019, Defendants/Aarjay paid Plaintiff $370,431.67 over a period of sixty (60) leaving a balloon payment of $418,126.43 and only after filing suit on January 3, 2025 did Defendants assert claims of fraud and fraudulent inducement in its Defendants' First Amended Answer and Affirmative Defenses and Original Counterclaim [Dkt 23] filed on April 18, 2025.

Further, though requested to produce documents supporting its responses to interrogatories, there were no documents produced that supported Defendants' contentions of fraud and fraud in the inducement.

### D. Addressing Defendants' Specific Allegation.

The Sidhoos assert claims against Plaintiff and Third Party Defendants for fraud and fraud in the inducement as well as violations of a non-compete. None of these allegations are true and there is no evidence showing otherwise.

Regarding allegations of dummy SKUs, per the Affidavits of John Blackrock and Jonathan Elder, "[t]here is no such thing as a "dummy SKU." As stated by John Blackrock in his Affidavit, "[w}hat the Sidhoos are referencing to is a normal part of inventory-heavy businesses where you keep an SKU around just in case you want to sell it again in the future. For example, one color might not sell very well, so we would stop ordering inventory for the color but keep the SKU around. Another reason you never delete the SKU is that if you do, Amazon deletes any customer reviews attached to said SKU. Therefore, it would never make sense to actually delete a SKU on Amazon. This has nothing to do with our financials. In fact, Rick knew about this when he carried out due diligence. When our Amazon account was audited, every aspect of our business was analyzed. It's a completely normal part of business." *See Affidavit of John Blackrock*, Page 3, Paragraph 10 and *Affidavit of Jonathan Elder, Pages 3, Paragraph 10*.

Regarding allegations of "black hat" tactics, per Affidavit of John Blackrock "black hat" tactics refer to unethical or irregular practices that some sellers use to gain a fraudulent advantage on Amazon such as false reviews and counterfeit goods. RebateKey is a platform that connects Amazon sellers with buyers who receive rebates on purchases. It works by offering buyers a way to get cashback on full-price Amazon purchases, essentially acting as a rebate and coupon site. Sellers use it to boost sales and gain reviews, while buyers can find deals and potentially get products at a significant discount. We never used black hat tactics and were known by other sellers for refusing to be part of any of this. We were never suspended by Amazon or any other company for unethical activities. Rebate Key isn't "black hat tactics" and wasn't frowned upon by Amazon.

In fact, Rebate Key was on Amazon's approved list of software providers when we recommended it. Amazon only removed Rebate Key after a few years because they saw how profitable it was and created their own "rebates." *See Affidavit of John Blackrock*, Pages 3 and 4, Paragraph 11 and *Affidavit of Jonathan Elder*, Pages 3 and 4, Paragraph 11.

As for allegations that John Blackrock violated a non-compete, per the Affidavit of John Blackrock, "[John Blackrock and Luke Bartell] formed a company called Meraki World Merchants ("Meraki"). Meraki was set up in August 2018 for the purpose of importing and selling freshwater trout from Colombia. Meraki then pivoted to selling men's leather shoes made in Colombia in 2021. Selling trout in Colombia was not a violation of the non-compete. Then in 2022, after termination of the three (3) year non-compete as to ]John Blackrock], Meraki started selling wallets, which was permissible. As for soliciting Luke Bartel, who provided services to Plaintiff, Mr. Bartel was an employee member of Bearcreek prior to the closing of the sale of assets to Aarjay. None of the items sold by Meraki were "Restricted Products" under the Non-Compete and Non-Solicitation Agreement. Finally, at no time did Meraki, Jonathan Elder or John Blackrock ("Third Party Defendants") solicit Luke Bartel to leave Aarjay or terminate his relationship with Aarjay. In fact, some time in 2021, Aarjay converted Luke Bartel from an employee to an independent contractor and thereafter Luke Bartel remained an independent contractor for Aarjay until January 2025" See *Affidavit of John Blackrock*, Page 4, Paragraph 12. Further at no time did Jonathan Elder violate a non-compete. *See Affidavit of Jonathan Elder*, Page 4, Paragraph 12.

Regarding allegations pertaining to fraud regarding RFID wallets, per the Affidavit of John Blackrock, "an RFID wallet is a type of wallet designed with built-in technology to block radio frequency identification (RFID) signals, preventing unauthorized scanning of the information stored on RFID-enabled cards like credit cards, debit cards, and IDs. [Blackrock] wrote an article, which was published in August 2024, well after the sale of assets to Aarjay in August 2019. Per

the article, [John Blackrock] indicated that RFID is not necessary for credit and debit cards. In 2019, it was best practice to use RFID wallets but over the years, credit/debit card technology had improved and by 2023 RFID wallets were not necessarily considered necessary." John Blackrock further stated that "RFID wallets were and are still considered best practice especially for security cards issued by hotels and employers wherein such cards are RFID capable." *See Affidavit of John Blackrock*, Pages 4 and 5, Paragraph 13 and *Affidavit of Jonathan Elder*, Page 4, Paragraph 13

Regarding allegations pertaining Defendants being advised to stop selling and dispose the Royal Oak single adjustable straps using the D-ring attachments because they were unsafe, per the Affidavit of John Blackrock, "at no time did Blackrock or Elder advise the Sidhoos 'to no longer stock the double adjustable straps … because 'they don't' sell.' The Royal Oak single adjustable straps using the D-ring attachments were not selling as well and had negative reviews which though not true, it made sense to no longer stock the Royal Oak single adjustable straps using the D-ring attachments. As acknowledged by the Sidhoos, this was disclosed to the Sidhoos." *See Affidavit of John Blackrock*, Page 5, Paragraph 14 and *Affidavit of Jonathan Elder*, Page 4, Paragraph 14.

As for manipulating sales figures to show higher profits in 2018, per the Affidavit of John Blackrock, "such allegation is false. In fact, Bearcreek retained outside professionals to handle all accounting and bookkeeping and this same group was retained by Aarjay to handle its accounting." *See Affidavit of John Blackrock*, Page 5, Paragraph 15 and *Affidavit of Jonathan Elder*, Pages 4 and 5, Paragraph 15.

As for failing to transfer ownership of its patents for products to Arjay, per the Affidavit of John Blackrock, there was wallet design patent pending that was a new design and not being sold. *See Affidavit of John Blackrock*, Page 5, Paragraph 16 and *Affidavit of Elder*, Page 5, Paragraph 16.

And then there are the alleged damages Defendants claim they sustained. Defendants allege that they should be awarded all funds they invested to purchase and operate Aarjay, all funds they were required to repay Berkshire Bank and attorneys' fees. Yet, there simply is no evidence Defendants sustained damages. *See Affidavit of John Blackrock*, Pages 5 and 6, Paragraphs 17 - 20 and *Affidavit of Elder*, Pages 5 and 6, Paragraphs 17 - 20.

### E. Defendants Profited Greatly Aarjay.

Attached to the Appendix as Exhibit "4" for all purposes are documents produced by Defendants in response to Request for Production No. 22.

**Request 22:** All documents relating to salaries and/or distributions Defendants received from Aarjay Products, LLC.

**Response:** See documents in subfolder 22.

In summary, the documents show that notwithstanding Defendants' alleged damages, they still make their 401K contributions even when AarJay can't pay its debts to the bank.

**401k Employee deduction + Employer Contribution:**

2020 - $103,256 (maxed out)

2021 - $103,850 (maxed out)

2022 - $109,765.51 (maxed out)

2023 - $35,862.6

2024 - $59,488.68

2025 - 19,500

Total - $431,722.79

**Total Aarjay cost for employing Sidhoos'** (Salary, employment tax, 401k). This doesn't include Luke Bartel's employee/contractor cost to Aarjay.

2020 - $189,542.68

2021 - $192,259.10

2022 - $198,010.15

2023 - $150, 861.65

2024 - $137, 373.07

2025 - $24,582.36 (Jan 1 - Mar 31)

Total $892,629.01

Defendants defaulted on their bank loan and sellers note in 2024 and still managed to pay themselves and contribute to their 401ks.

**Gross Income**

2019 - $2,464,969.56

2020 - $6,667,877.84

2021 - $3,567,771.47 (Gross revenue down almost 46% from 2020, however, Defendants' salary and 401k cost was $3,000 higher)

2022 - $1,972,148.38 (Gross revenue was down another 46% from 2022 and 70% from 2020, however Defendants' salary and 401k cost was $6k and $9k higher respectively)

2023 - $2,008,199.72

2024 - $1,324,438.90

Total - $18,005,405.87

Defendants grossed over $18 million from August 13, 2019, through December 31, 2024, and though they claim damages, they continued to contribute the maximum amount to their respective 401Ks.

They certainly were not too concerned about the viability of Aarjay having continued to fund their respective 401Ks and increase their salaries. And as a side note, under Virginia law, 401K plans are fully exempt from claims of creditors. See Section Va Code Ann, §34-34 (B)[6] Further, 401K plans are exempt under the United States Bankruptcy Code. See 11 U.S.C §522(b)(4).

---

[6] B. Except as otherwise provided in this section, the interest of an individual under a retirement plan shall be exempt from creditor process to the same extent permitted under federal bankruptcy law for such a plan. The exemption provided by this section shall be available whether such individual has an interest in the retirement plan as a participant, beneficiary, contingent annuitant, alternate payee, or otherwise.

## F.  Defendants' Damages Are Circumstantial and Too Speculative.

The relief requested by Defendants is circumstantial and too speculative to support (a) recission of the Guaranty; (b) an award of all funds they invested into the purchase and operation of the business of AarJay; and (c) an award of all amounts paid to Berkshire Bank.  The damages require an inference that each alleged element required to prove fraud and for violating the non-compete be reasonably well supported.

As noted in *Roehrs v. Conesys, Inc*. 332 Fed. Appx. 184 (5th Cir. 2009),

> Under Texas law, neither the fact and amount of damages alleged can be speculative; both must be established with "reasonable certainty." A plaintiff's failure to show either acts as a bar to recovery. *Burkhart Grob Luft Und Raumfahrt GmbH & Co. KG v. E-Sys., Inc.,* 257 F.3d 461, 467 (5th Cir. 2001)(citing to *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.,* 877 S.W.2d 276, 279-80 (Tex. 1994)). The inquiry into the "reasonable certainty" of the damages is flexible and fact-sensitive. *Id.*

*Roehrs v. Conesys, Inc.* 332 Fed. Appx at 186.  See also *BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*, 2024 U.S. Dist. LEXIS 155364, citing *Roehrs v. Conesys, supra.*

Even though the Fifth Circuit in *Cora Pub, Inc. v. Cont'l Cas. Co*., 619 F.2d 482, 486 (5th Cir. 1980) found that inference stacking was acceptable, it stated in no uncertain terms:

> [t]he important question is **whether the inference is reasonably well supported by the evidence**. We must judge the inference as we would any other, taking into consideration that its probability may be attenuated by each underlying inference.

*Id*. at 486 (emphasis added).

There simply is no evidence that Defendants were damaged.  In fact, keeping in mind that the transaction between the parties closed on August 13, 2019, Aarjay reported $2,464969.56 in gross income, $3,567,771.47 in gross income in 2021 and through December 31, 2024, reported $1,324,438.72 in gross income.  And of course, it reported a total of $18,005,405.87.  Further, with the exception of the alleged non-compete violations relating to the RFID wallets, which occurred

three years after the sale and outside the non-compete period, any such alleged fraud cannot be tied to any sort of damages.

## CONCLUSION

In conclusion, Plaintiff has established that they are entitled to summary judgment on their guaranty claim.  Aarjay is in default of its payment obligations under the Note and still owes the final balloon payment of $418,860.00 which was due and payable on August 13, 2024.  The Sidhoos signed a guaranty guaranteeing the note.  Plaintiff seeks recovery against the Sidhoos based on the Personal Guaranty in the principal amount due and owing, $418,860.00 plus $20,906.32 consisting of the 5% charge referenced in the Note, plus post default interest of 18% per annum which as of December 12, 2024 is $25,087.59 for a total of $443,214.02 and which continues to accrue interest at the rate of 18% per annum

As for the Sidhoos claims for fraud, there simply is no evidence supporting that Bearcreek, John Blackrock and or Jonathan Elder committed actionable fraud based on misrepresentation. There simply were no material representations that were false when made.  Further to the extent there is any evidence that there were materially false representations, there is no evidence that John Blackrock or Jonathan Elder individually or by and through Bearcreek made such representations knowing they were  false or made them recklessly without any knowledge of the truth and as a positive assertion.  Nor did they make such representations with the intent that the Sidhoos should act upon them.  Further there is no evidence that the Sidhoos acted in reliance on any such alleged false representation; and that they suffered injury.  Failure to establish anyone of these elements is grounds for granting Plaintiff's Motion for Summary Judgment.

As for the Sidhoos claims Fraud in the inducement of a contract , there simply is no evidence that Jonathan Elder and John Blackrock individually or by and through Bearcreek made material representations of fact that were false, for which they either known to be false when made

or they recklessly asserted same without knowledge of the truth, which was intended to be acted on, that was relied on, and that caused injury. Bottom line, the Sidhoos were not fraudulently induced into signing the Personal Guaranty or the Asset Purchase Agreement.

As for the Sidhoos claim that John Blackrock violated a non-compete, there simply is no evidence of same.

For all these reasons, Plaintiff is entitled to summary judgment on its guaranty claim and John Blackrock and Jonathan Elder are entitled to summary judgment on the claims asserted against them by the Sidhoos.

Submitted: July 18, 2025

Respectfully submitted,

**COWLES & THOMPSON, P.C.**

By: _/s/William L. Siegel_
    **WILLIAM L. SIEGEL**
    Texas Bar No. 18342480

901 Main Street, Suite 4000
Dallas, TX 75202
(214) 672-2000
(214) 672-2020 (Fax)
Email: bsiegel@cowlesthompson.com

ATTORNEYS FOR RTW GOODS, LLC D/B/A BEARCREEK IMPORTS, LLC AND JOHN BLACKROCK AND JONATHAN ELDER

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, Page 17**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 18th day of July 2025, a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record via electronic mail as listed below:

Justin L. Jeter
Jeter Melder, LLP
1006 N. Bowen Road, Suite 126
Arlington Texas 76012

*/s/William L. Siegel*
**WILLIAM L. SIEGEL**
